697 So.2d 1022 (1997)
Ella GLADNEY, Plaintiff-Appellant,
v.
Gordon H. MAY, Halliburton Services and Highlands Insurance Company, Defendants-Appellees.
No. 29373-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1997.
Rehearing Denied August 26, 1997.
*1023 John Milkovich, Carola Milkovich, Shreveport, for Plaintiff-Appellant.
Mayer, Smith & Roberts, L.L.P. by Ben Marshall, Jr., Shreveport, for Defendants-Appellees.
Before HIGHTOWER, STEWART and PEATROSS, JJ.
PEATROSS, Judge.
This case arises out of an automobile accident which occurred on Old Minden Road in Bossier City. The case was tried to a jury to whom written interrogatories were presented at the conclusion of the trial. The jury panel's answers to the interrogatories were inconsistent regarding the plaintiff's fault as it related to the cause of the accident. The trial court, however, failed to comply with La. C.C.P. art. 1813(E), which requires that a new trial be ordered or that the matter be returned to the jury for further consideration. Pursuant to Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, we make a de novo review of whether the plaintiff's actions constituted negligence and were a legal cause of the accident. We review the issues raised in the remaining assignments of error under the standard of review of manifest error. The additur judgment is vacated, as its execution was contrary to the provisions of La. C.C.P. art. 1813. Finding the defendant 100% at fault, we reverse the allocation of fault to the plaintiff. The determination of quantum is affirmed.

FACTS
Plaintiff Ella Gladney ("Gladney") was the only witness to the accident who testified at trial. According to her testimony, she was driving her vehicle westbound on June 30, 1992, on a four-lane section of Old Minden *1024 Road in the outside lane of traffic. As Gladney approached a section of Old Minden Road with which an exit lane from Interstate-20 merges, defendant Gordon May ("May") was driving down that Interstate-20 exit ramp. A yield sign faced May at the end of the Interstate-20 exit ramp indicating traffic exiting Interstate-20 should yield to the Old Minden Road traffic. In order to avoid a collision with May, Gladney steered her vehicle out of the outside lane of Old Minden Road and into the inside lane. May, however, failed to yield and his vehicle struck Gladney's vehicle. The collision occurred in the inside, westbound lane of Old Minden Road. Gladney sustained injuries as a result of the accident.
Gladney filed suit against May, Halliburton Services and Highlands Underwriters Insurance Company on April 22, 1993. On March 20, 1995, the case was called for trial by jury. After two days of jury selection, a seven-day jury trial commenced. The parties stipulated that Gladney and May were involved in a vehicular collision on Old Minden Road in Bossier City on June 30, 1992. The parties also stipulated that, at the time of the accident, May was working within the course and scope of his employment with Halliburton Services and was insured by Highlands Underwriters Insurance Company.
The jury returned its verdict on March 30, 1995. The jury allocated 90% of fault to May and found that his fault was the sole cause of the accident. The jury, however, allocated 10% of fault to Gladney, but found that her fault was not a cause of the accident. The jury awarded Gladney a total of $47,500 in special and general damages. This award was subject to a reduction for the percentage of fault attributable to Gladney and a reduction for the amount of medical bills paid under the medical payments provision of the Gladney's automobile insurance policy.
Gladney filed a post-trial motion for additur, JNOV or, in the alternative, a new trial. At the hearing of the motion held December 21, 1995, the trial court refused to grant a new trial and denied Gladney's motion to the extent it sought an increase in the amount of special and general damages. The trial judge stated, however, that the jury interrogatories were inconsistent to the extent the jury assigned Gladney 10% of the fault, but found her fault not to be a cause of the collision. To cure the defect, the trial judge entered an alternative order for a JNOV or an additur "adding back in the ten percent of fault" the jury had assigned to Gladney. The trial judge informed the defendants that they had 30 days to concur in the additur/reallocation or a new trial would be granted.
The defendants submitted an ex parte Additur Order in which they agreed to an additur in the amount of $5,277.77. Signed by the trial court on January 12, 1996, this additur order raised the total damage award from $47,500 to $52,777.77, which was subject to a reduction for the percentage of fault attributable to Gladney and a reduction for the amount of medical bills paid under the medical payments provision of Gladney's automobile insurance policy. The trial court denied Gladney's subsequent Motion to Amend or Vacate Order.
Gladney appeals, assigning seven assignments of error. For the reasons below, we vacate the additur judgment; reverse in part the original judgment; affirm in part the original judgment; and render.

DISCUSSION

INCONSISTENT JURY INTERROGATORIES: EXECUTION OF ADDITUR JUDGMENT AND FAILURE TO GRANT A NEW TRIAL
Basing her argument on the inconsistency of the jury interrogatories, Gladney assigns as errors the trial court's granting of the additur judgment and failing to grant a new trial. We address these assignments of error first because we find that the alleged errors necessitate a de novo review of the assessment of fault.
Pursuant to La. C.C.P. art. 1812(C), a jury shall attribute a percentage of fault to a party only after it has determined that such party is negligent and that the party's negligence was a legal or proximate cause of the accident. The jury in this case found that Gladney's negligence was not a legal or proximate cause of the accident but, nevertheless, assigned her 10% of fault in the accident. *1025 The trial court correctly recognized the inconsistency and attempted to cure the matter by executing an additur order, to which defendants consented. La. C.C.P. art. 1813(E), however, required the trial court either to return the matter to the jury for further consideration of its answers or to order a new trial.
In Ferrell v. Fireman's Fund Ins. Co., supra., the jury found the plaintiff was negligent and plaintiff's negligence was not a proximate cause of the accident, but nevertheless apportioned 30% of fault to the plaintiff. The trial court did not return the jury for further consideration or order a new trial as required by La. C.C.P. art. 1813(E), but entered a judgment on the verdict. The Louisiana Supreme Court held that failure to follow the prescribed course of art. 1813(E) created legal error which may have interdicted the fact-finding process. The Louisiana Supreme Court stated:
Where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence.... This court determined that the trial court committed a legal error which may have interdicted the fact-finding process; therefore, we remand this case to the Court of Appeal for it to complete this de novo review.
Ferrell v. Fireman's Fund Ins. Co., supra., at 747.
As we read Ferrell, a de novo review is required for only the aspect of the fact-finding process interdicted by legal error. In this case, after the jury returned the inconsistent interrogatories regarding fault and causation of the accident, legal error occurred in the trial court's failure to return the matter to the jury or to order a new trial. This interdicting factor affected only the jury's determination of whether Gladney was guilty of any negligence that was a legal cause of the accident. No legal error occurred which affected the fact-finding and evaluation process of the jury's determination of quantum. Pursuant to Ferrell, finding the record complete, we therefore vacate the additur judgment and conduct a de novo review of the assessment of fault. Regarding the jury's evaluation and fact-finding as to quantum, the manifest error standard of review remains applicable.
Gladney's uncontradicted testimony reflected that she was without fault in the accident. She was proceeding west on Old Minden Road when her vehicle was struck by May's vehicle as he exited Interstate-20. A yield sign faced traffic exiting the ramp, indicating the traffic exiting Interstate-20 should yield. Gladney testified that although she moved her vehicle completely into the inside, left-hand lane, May failed to yield and collided with the Gladney vehicle. Officer Wes Magee of the Bossier City Police Department testified that, based on his investigation of the accident, Gladney had not violated any traffic laws. He further testified that his investigation led him to determine that May had failed to yield. Defendants offered no evidence to refute Gladney's testimony concerning fault and causation in the collision. Consequently, we find that May was at fault and that May's fault was the sole cause of the accident. Gladney was without fault in the accident and is entitled to a judgment against defendants.

DAMAGES

General Damages
By assignment of error, Gladney contends that the jury's award of $29,500 as general damages is inadequate and an abuse of discretion.
General damages are those which may not be fixed with pecuniary exactitude. They instead involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitively measured in monetary terms. Keeth v. Department of Public Safety & Transportation, 618 So.2d 1154 (La.App. 2d Cir.1993), appeal dismissed, 619 So.2d 563 (La.1993).
In appellate review of general damages, the initial inquiry is whether the award *1026 for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); De Los Reyes v. USAA Cas. Ins. Co., 28,491 (La.App.2d Cir. 6/26/96), 677 So.2d 668. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Bonner v. Watkins Motor Lines, Inc., 494 So.2d 1363 (La.App. 2d Cir.1986); Winterrowd v. Travelers Indem. Co., 452 So.2d 269 (La.App. 2d Cir.1984), aff'd 462 So.2d 639 (1985). Only after an articulated analysis of the record discloses an abuse of discretion may the appellate court determine that the award is either excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La.1979); De Los Reyes, supra.
In testing whether the trial court abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Keeth, supra. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn, supra.
In the instant case, following the collision, Gladney was taken by ambulance to Bossier Medical Center on June 30, 1992. Her x-rays indicated she had not suffered any factures and she was released from Bossier Medical Center that same day. Dr. James Wiseman, a chiropractor, first examined Gladney two days after the collision and continued to treat her through the time of the trial, for a total of approximately seventy-eight times.
At trial, the testimony regarding the extent and nature of Gladney's injuries varied greatly. Dr. Wiseman testified that he documented a series of objective findings verifying that Gladney suffered injuries caused by the collision. He diagnosed Gladney as having suffered cervical injuries, including trauma to her cervical facet joints. He further testified that at the time of trial, she continued to suffer from "chronic radiculopathy syndrome," which he said was caused by scar tissue and adhesions around the injured cervical joint and cervical nerve root irritation. Dr. Wiseman indicated Gladney's condition is permanent and she will suffer chronic pain the rest of her life.
Dr. Wiseman referred Gladney to Dr. Kevin Balter, M.D., an osteopath and anesthesiologist who specializes in pain management. Dr. Balter treated Gladney for one year from March 24, 1994, through trial in March 1995. Dr. Balter diagnosed Gladney as suffering from facet joint injury, nerve root irritation, muscular spasm, torn cervical ligament, torn cervical muscle and fibrosis. He performed two epidural steroid injections in April 1994 and selective nerve root injections in May 1994. Further injections were given in June, August and September of 1994. In October 1994, Dr. Balter prescribed a TENS unit and cervical traction unit for Gladney. He did follow-up physical examinations, including one on March 1, 1995, a few weeks before trial. At trial, Dr. Balter testified that Gladney was still suffering significant lumbar muscular spasm and cervical spasm; that her facet joints were still injured; and that her condition is chronic and permanent.
Defendants presented testimony by Dr. Jack Ferrell, an orthopedic surgeon, who examined Gladney on February 9, 1995. Dr. Ferrell testified that Gladney did not inform him of any prior problems regarding the areas of her body with which she was then complaining of pain. He stated that he examined Gladney and found no objective findings of injury. He did find Gladney had a degenerative disc disease, which, according to Dr. Ferrell, predated the accident. Dr. Ferrell further stated that he felt that Gladney was "magnifying" her symptoms of weakness and leg pain and that her complaints of low back pain were inconsistent. He testified that she would have been unable to walk without assistance if her leg had been as weak as she indicated during her exam.
Orthopedic surgeon Dr. Lewis Jones also testified for the defense. Dr. Jones examined Gladney on November 23, 1994, on referral from Dr. Balter. Although he found *1027 no objective evidence of nerve root irritation, neurological problems, or radiculopathy, he agreed with Dr. Ferrell that Gladney had a degenerative disc disease that pre-dated the accident. He did not feel surgery or future orthopedic treatment was needed and he did not believe that Gladney's injuries were permanent. Regarding the chiropractic treatment, Dr. Jones stated that chiropractic manipulation can actually aggravate pre-existing disc problems. Dr. Jones stated that the types of injuries of which Gladney complained usually resolve within a few weeks to three months; rarely, the symptoms persist from six months to a year. Dr. Jones recommended against using chiropractic treatment over a long period of time without a valid reason.
While Gladney's complaints of pain continued through the time of trial and Dr. Wiseman and Dr. Balter testified as to her injuries, defendants presented testimony challenging Gladney's reports and indicating no objective findings of injury other than a pre-existing degenerative disc disease. Drs. Ferrell and Jones, however, testified that they did not doubt that Gladney was experiencing pain. Given the diversity of the testimony in this case, we cannot say that the $29,500 general damage award constitutes an abuse of the jury's great discretion.
Past Medical Expenses
By assignment of error, Gladney argues that the jury/trial court erred by failing to award her all her past medical expenses. She submitted a total of $30,962.90 in past medical expenses; the jury awarded her $7,000.00 for past medicals. In a post-verdict motion, and now again on appeal, Gladney suggests that her lack of bad faith in incurring these charges entitles her to an increase in the jury award.
Of course, medical expenses are a proper item of damages. Thames v. Zerangue, 411 So.2d 17 (La.1982); Chambers v. Graybiel, 25,840 (La.App.2d Cir. 6/22/94), 639 So.2d 361, writ denied, 94-1948 (La.10/28/94), 644 So.2d 377. A plaintiff's recovery of medical charges, however, must be confined to those expenses related to the accident. Phiratsamy v. Pipes, 27,209 (La.App.2d Cir. 8/23/95), 660 So.2d 172; Chambers v. Graybiel, supra. Nor is a jury required to accept totally a plaintiff's perception concerning the degree and magnitude of his or her injuries. Phiratsamy v. Pipes, supra, at 174.
In the instant case, the jury panel was given the instruction that it was to determine whether or not the treatment given Gladney was for problems caused by the accident and whether or not the charges were reasonable and necessary for Gladney's condition. Gladney's attorney did not object to this instruction nor was the giving of this instruction assigned as error on appeal.[1] While Gladney correctly argues that past medical expenses are generally recoverable, the recovery of medical charges is limited to those expenses related to the accident.
While Gladney, Dr. Wiseman and Dr. Balter testified as to the continuation of Gladney's pain and the necessity for the treatments administered, defendants presented testimony which cast doubt on the necessity and reasonableness of the charges incurred. As discussed above, Dr. Ferrell testified that Gladney's complaints of low back pain were inconsistent and, with the weakness she exhibited in her leg, she would have been unable to walk without assistance. Dr. Jones testified that the types of injuries exhibited by Gladney usually resolve within a few weeks to a few months and are rarely symptomatic for more than a year.
Following the judge's instruction, the jury could have reasonably concluded, given the testimony presented by defendants, that not all of the medical charges incurred by Gladney were necessary, reasonable and/or related to the accident and declined to award Gladney the total amount of past medical expenses incurred. We find no manifest error in the amount of the jury's award for past medical expenses.

*1028 Future Medical Expenses

By assignment of error, Gladney urges that the jury/trial court erred in failing to award an adequate amount for future medicals. Gladney argues that she requires $56,700 in chiropractic treatment over her life expectancy; the jury awarded $5,000 in future medical expenses.
Future medical expenses are a legitimate item of damages. Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281 (La.1984). Rowsey v. Jones, supra.
Regarding future medical expenses, it must be demonstrated that such outlays more probably than not will be incurred. Phiratsamy v. Pipes, 27,209 (La.App.2d Cir. 8/23/95), 660 So.2d 172; Thomas v. Petrolane Gas, 588 So.2d 711 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1201 (La.1992).
Dr. Wiseman testified that Gladney would require at least $56,700 in chiropractic treatment over the course of her lifetime. As previously stated, Dr. Jones testified that chiropractic manipulation can actually aggravate pre-existing disc problems. He further stated that rarely do the types of injuries sustained by Gladney take more than a year to resolve and that he recommends against using chiropractic treatment over a long period of time without a valid reason. Dr. Jones also testified that he saw no reason for Gladney to continue with facet joint injections and that she needed no future orthopedic treatment or surgery.
Given the disparity of the testimony regarding the extent of Gladney's injuries and Dr. Jones' testimony regarding long-term chiropractic treatment, the jury could reasonably have concluded that Gladney's projected chiropractic expenses were not required as a result of injuries she sustained in the accident and thus, correctly disallowed recovery for a portion of the anticipated charges. We find no error in the jury's award of future medical expenses.

PRECLUSION OF TESTIMONY REGARDING MEDICAL BILLS
By assignment of error, Gladney argues that the trial court erroneously precluded her from testifying concerning her medical bills. She urges that she should have been allowed to testify that each of the bills reflected charges for medical treatment incurred in obtaining treatment for pain she suffered after the collision.
Although it may have been preferable to allow Gladney to make a brief statement about each bill, the medical experts were allowed to testify as to the treatments given Gladney. These experts were better qualified to testify regarding the necessity of and reason for the treatments. The trial court has authority to exercise reasonable control over the presentation of evidence so as to make the presentation effective and avoid needless consumption of time. La. C.E. art. 611. We find the trial judge properly exercised his control over the presentation of the evidence and did not commit reversible error in his refusal to allow Gladney's testimony as to each individual medical bill. This assignment of error has no merit.

PRECLUSION OF RELEVANT EVIDENCE AND RELEVANT CROSS-EXAMINATION
By assignment of error, Gladney contends that the trial court erred in precluding relevant evidence and foreclosing relevant cross-examination. In this assignment of error, Gladney lists 35 "non-exclusive" instances in which the trial court excluded relevant evidence and/or foreclosed pertinent cross-examination. Gladney did not articulate authority for the relevance of the "errors."
This assignment of error is not properly briefed. An assignment of error which is not briefed may be considered abandoned. URCA 2-12.4. We note, nevertheless, that much of the testimony which Gladney complains was "foreclosed" by the trial court was repetitive. Other testimony was correctly prohibited on the bases of being cumulative or irrelevant. Under the authority given the trial court in La. C.E. art. 611, the trial judge correctly exercised his control over the presentation of the evidence in an attempt to avoid needless consumption of time and to provide an effective presentation for the ascertainment of the truth.

*1029 CONCLUSION
For the foregoing reasons, the additur judgment is vacated. The judgment of trial court is reversed in part to reflect that May was solely at fault in the accident and that Gladney was without fault in the accident. The judgment is affirmed in all other respects. Costs of this appeal are split equally between the parties.
ADDITUR JUDGMENT VACATED.
ORIGINAL JUDGMENT REVERSED IN PART; AFFIRMED IN PART; RENDERED.
STEWART, J., concurs in part and dissents in part with written reason.
STEWART, Judge, concurring in part and dissenting in part.
I concur with the majority opinion on all assignments of error except Gladney's assignment regarding past medical expenses.
A jury is in error for failure to award the full amount of medical expenses proven by a victim. Sumrall v. Sumrall, 612 So.2d 1010 (La.App. 2 Cir.1993); Andres v. Liberty Mutual Insurance Company, 568 So.2d 651 (La. App. 3 Cir.1990). Allegations that certain medical expenses were incurred and presentation of the bills, absent sufficient and contradictory evidence or reasonable suspicions that the bill is unrelated to the accident, is sufficient to support the inclusion of the item in the judgment. Rowsey v. Jones, 26,823 (La.App. 2 Cir. 5/10/95), 655 So.2d 560.
A tortfeasor is required to pay for over treatment or unnecessary treatment unless such treatment was incurred by the victim in bad faith. Sumrall v. Sumrall, supra; Starnes v. Caddo Parish School Board, 598 So.2d 472 (La.App. 2 Cir.1992); Temple v. Shannon, 505 So.2d 798 (La.App. 2 Cir.1987). The rule requiring the tortfeasor to pay for the over treatment of the victim applies to excessive treatment of the victim by a chiropractor when the over treatment in not attributable to the bad faith of the victim. Day v. Silver Oak Cas., Inc., 28,566 (La.App. 2 Cir. 8/21/96); 679 So.2d 486; Starnes v. Caddo Parish School Board, supra; Tyler v. Richardson, 476 So.2d 899 (La.App. 2 Cir. 1985), writ denied, 478 So.2d 907 (La.1985).
As discussed by the majority, Gladney, Dr. Balter and Dr. Wiseman testified that Gladney incurred injuries requiring the prescribed treatments. While Dr. Ferrell testified that he thought Gladney was "magnifying" her symptoms on February 9, 1995, he also testified that he did not think that she was lying regarding the pain in her back. Dr. Jones testified that he had no reason to doubt Gladney's complaints of pain.
Absent bad faith on the part of Gladney, the cost of her past medical treatment must be borne by the defendants. In Tyler v. Richardson, supra, this court stated:
The tortfeasor must pay the victim for the cost of unneeded medical treatment of the victim's injuries unless the expense was incurred as a result of the bad faith of the victim. The reason for the rule is that as between the victim and the tortfeasor the basic cause for the excessive expense of treatment is attributable to the party whose fault caused the injury rather than the victim.... This rule requiring the tortfeasor to pay for the overtreatment of the victim applies to excessive treatment of the victim by a chiropractor when the overtreatment is not attributable to the bad faith of the victim. (Citations omitted.)
Tyler v. Richardson, supra, at 904. See also Starnes v. Caddo Parish School Board, supra.
In Temple v. Shannon, supra, this court stated:
An injured party is entitled to choose chiropractic treatment to alleviate his or her symptoms even though this choice may be objectionable to advocates of medical treatment.... Even if a tort victim has incurred expenses for over-treatment by a chiropractor, the tortfeasor is liable for the expenses unless they were incurred by the victim in bad faith. (Citations omitted.)
Temple v. Shannon, supra, at 806.
The parties stipulated that Gladney incurred $30,963.90 in medical expenses following the accident, including a $6,750.00 fee for Dr. Balter's treatment of her chronic pain and a $10,801.33 facility fee charged by Willis-Knighton Medical Center for the treatments *1030 ordered by Dr. Balter. While the jury may reasonably have found that some of Gladney's treatment was unnecessary and/or excessive and may possibly have questioned the type of treatment provided, this record is devoid of evidence to support the conclusion or suggestion that Gladney incurred the treatment in bad faith. In light of the stipulation to the fact that these expenses were incurred and in the absence of any reasonable basis for finding these expenses were not related to the auto accident, the jury was manifestly in error for failing to award Gladney the full amount of her past medical expenses. See Sumrall v. Sumrall, supra. See also Rowsey v. Jones, supra. The judgment should be amended to award Gladney the full $30,963.90 in past medical expenses.
For the foregoing reasons, I respectfully dissent on the issue of past medical expenses.

APPLICATION FOR REHEARING
Before MARVIN, C.J., and HIGHTOWER, WILLIAMS, STEWART and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] It is well established that a party may not assign as error the giving of an instruction unless he objects either before the jury retires to consider its verdict or immediately thereafter, and states specifically the matter to which he objects and the grounds of his objection. Smith v. Bundrick, 27,552 (La.App.2d Cir. 11/3/95), 663 So.2d 554. See also LSA-C.C.P. art. 1793(C).